[Cite as *State v. Castellon*, 2019-Ohio-628.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 106813

---

### STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

### ESTEPHEN CASTELLON

DEFENDANT-APPELLANT

---

### JUDGMENT:
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-610907-A

**BEFORE:** Jones, J., Keough, P.J., Sheehan, J.

**RELEASED AND JOURNALIZED:** February 21, 2019

**ATTORNEYS FOR APPELLANT**

Mark A. Stanton
Cuyahoga County Public Defender

BY: Frank Cavallo
Assistant Public Defender
310 Lakeside Aveue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Steven N. Szelagiewicz
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant Estephen Castellon ("Castellon") appeals his rape and kidnapping convictions that were entered by the trial court after a bench trial. For the reasons that follow, we affirm.

## I. Procedural History

{¶2} In November 2016, Castellon was indicted on two counts of rape, one count of attempted rape, and one count of kidnaping with a sexual motivation specification.

{¶3} Castellon waived his right to a jury trial, and the case proceeded to a bench trial. The state presented seven witnesses, and Castellon made a Crim.R. 29 motion for judgment of acquittal at the close of the state's case; the motion was denied. The defense did not present any witnesses; it renewed its Crim.R. 29 motion, which was again denied.

{¶4} After its deliberations, the trial court found Castellon guilty of two counts of rape and one count of kidnapping with the sexual motivation specification. The court found him not guilty of attempted rape. The matter was referred to the probation department for the preparation of a presentence investigation report.

{¶5} Meanwhile, in the time between the court's verdict and sentencing, Castellon, pro se, filed numerous motions and "notices" with the court, requesting various forms of relief, based in part, on a claim of ineffective assistance of counsel. The trial court acknowledged the motions at the sentencing hearing, telling Castellon that "Ohio law does not allow dual representation. You have an assigned attorney * * * to represent you, which means that all of these motions can be stricken from the record because they were not filed by [your assigned attorney]." The trial court asked Castellon whether he wanted his assigned attorney to represent him at sentencing, to which he responded "no * * * unless I am given the opportunity to retain different counsel." The trial court denied Castellon's request for different counsel.

{¶6} The trial court then engaged in colloquy with Castellon to determine if he was knowingly, intelligently, and voluntarily giving up his right to counsel. After its colloquy with Castellon, the court denied his request for self-representation. Counsel told the court that she did not wish to adopt and argue any of the pro se motions Castellon had filed. The trial court sentenced Castellon to a seven-year prison term.

## II. Factual Background

{¶7} The following facts were adduced at trial. The victim, A.I., lived with her mother and Castellon, her mother's boyfriend. The incident giving rise to the charges occurred in August 2016, at which time A.I. was 18 years old.

{¶8} A.I. testified that, on the day at issue, she arrived home from work sometime after

midnight.   As she was coming in the house, Castellon was leaving to go to a bar.   Upon entering the house, A.I. saw her mother sleeping on the couch in the living room.

{¶9} A.I. testified that her bedroom was in the attic of the house, and that it was hot in the attic during the summer months.   As such, A.I. went to her mother's bedroom to sleep in her mother's bed.   A.I. was awakened when she heard Castellon return home.   He came into the mother's bedroom, which was where he normally slept, and, upon finding A.I. there, told her he would go sleep on the couch.

{¶10} A.I. testified that she fell back asleep, but was awakened again.   This time, she noticed that she was partially undressed, and that someone was engaging in sexual conduct with her.   She was on her stomach and the person was on her legs and she could not move.   At first A.I. thought someone had broken into the house and was scared.   She did not want to move because she was afraid they would hurt her mother or son who were also in the house.   After a couple of minutes, she noticed that the person was being "gentle."   The person then engaged in another form of sexual conduct with her.   At that time, she realized that the person was Castellon — he was trying to have further sexual contact with her and was pulling her legs towards the edge of the bed.   A.I. told him to stop, which he did.

{¶11} A.I. left the bedroom and contacted a friend, who came to the house; the two locked themselves in the attic.   The next day, A.I. told her mother what had happened.   She went to the police the following day and provided them with the clothes she had been wearing at the time of the incident.   A police officer drove A.I. to the hospital.   No rape kit was administered because it was a couple of days after the fact and A.I. had showered since the incident.

{¶12} A.I. testified that the following day, Castellon texted her, saying "I'm so sorry."

According to A.I., at the time of the incident, her mother was about 70 pounds heavier than she was, and so it would not have been easy for Castellon to confuse the two women. A.I.'s mother testified that Castellon told her that he blacked out and did not remember what had happened.

{¶13} The DNA analyst who examined A.I.'s clothing testified that the waistband of A.I.'s underwear contained a mixture of DNA with major and minor components. The DNA was compared to that of buccal swabs taken from both Castellon and A.I.'s boyfriend; neither one's DNA could be excluded from the mixture.

{¶14} The investigating detective, Donald Mladek ("Detective Mladek"), also testified. Prior to his testimony, the state and defense agreed that he would be allowed to summarize jail calls made by Castellon without playing the actual calls or requiring the translator who translated the "Spanglish" portions of the calls to testify.[1] Defense counsel indicated that she had listened to the calls and did not object to the transcript of the calls being admitted into evidence.

{¶15} In the recordings, Castellon told A.I.'s mother that he was "very drunk" at the time of the incident. He asked the mother to speak to A.I. about the incident. During the "Spanglish" portion of the recordings, Castellon was speaking with his mother and he said,

> [i]t's what confuses me is that she knew I was arriving drunk and she is in there in bed almost half — you know what I'm saying? So it's like, well, did she do that on purpose? Was it something, like I rolled over and I'm thinking it's [my girlfriend.] And then oh sh\*\*, it's not. And I rolled back over and fell asleep, drunk asleep. You know what I mean? Cuz it didn't happen. You know what I mean? Or did. It's just real confusing to me. And that's why the story changed so many different directions. But definitely when they talk to the father and the boyfriend it got amplified. Which is understandable.

{¶16} Castellon's mother said "I am hoping it wasn't you. Are you sure it wasn't you? You didn't stick the pinga in there." Castellon responded, "[r]ight. Well, that was my first

---

[1]"Spanglish" commonly refers to a combination of Spanish and English.

reaction. How's it even going to be that charge if that's not what happened. You know what I'm saying? * * * The charge itself is erroneous because that didn't happen and she's not claiming that. So * * * that's a bad charge." His mother then asked if he was certain that it did not happen, to which Castellon replied, "[n]o. I was dizzy drunk. * * * That's what [A.I.'s mom] said." He further told his own mother, "I can picture myself like realizing, oh sh**. It's not [his girlfriend] and then stopping."

{¶17} Detective Mladek also photographed the text messages exchanged between A.I. and her friend on the day of the incident. Further, the detective obtained Castellon's cell phone and obtained a search warrant to take a mirror image of the phone. Although it had been deleted, the detective located Castellon's text to A.I. apologizing. Detective Mladek also recovered a deleted text message to Castellon confirming a reservation for an airline flight from Cleveland to Los Angeles for three days after the incident occurred.

### III. Assignments of Error

I. There was insufficient evidence produced at trial to support a finding of guilt on all counts.

II. The appellant was found guilty against the manifest weight of the evidence.

III. Appellant was denied the effective assistance of counsel in his trial.

IV. The cumulative errors committed during the trial deprived the appellant of a fair trial.

V. Appellant was denied his right to represent himself at sentencing.

### IV. Law and Analysis

**Sufficiency of the Evidence**

{¶18} In his first assignment of error, Castellon contends that the state failed to present sufficient evidence to support the rape and kidnapping convictions.

**{¶19}** The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶20}** Castellon was charged and convicted of rape and kidnapping under R.C. 2907.02(A)(2) and 2905.01(A)(4), respectively. The rape statute provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2). According to Castellon, the state's evidence against him was "clearly deficient with respect to the element of purpose." "Purposely" is explained in R.C. 2901.22 as follows:

> A person acts purposely when it's the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

**{¶21}** Castellon contends that the state's evidence only demonstrated the following:

> A man entered his own bed, intoxicated and late at night, where he began gently engaging in sexual activity with the other person present, which had until that very night always been one person — his consensual romantic partner, only to discover that on this rare occasion there was someone else in the bed. Upon both parties learning of the mistake, all sexual activity halted immediately.

**{¶22}** What Castellon ignores, however, is A.I.'s testimony that Castellon entered the bedroom twice. The first time he entered the bedroom, he discovered that A.I. was in there, in the bed. He told her not to leave, that he would go sleep on the couch. The second time he entered the bedroom was when he engaged in sexual activity with A.I. On this record, the state

presented sufficient evidence that Castellon purposely engaged in sexual conduct with A.I.

{¶23} Castellon further contends that the state failed to present sufficient evidence of force or threat of force, citing A.I.'s testimony that Castellon was "gentle." As to the use of force or threat of force required for a rape conviction, the Supreme Court of Ohio has stated that "'[f]orce need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.'" *State v. Eskridge*, 38 Ohio St.3d 56, 58-59, 526 N.E.2d 304 (1988), quoting *State v. Fowler*, 27 Ohio App.3d 149, 154, 500 N.E.2d 390 (8th Dist.1985). A.I. testified that when she realized she was being sexually assaulted, she was "scared to move." She also described how Castellon "pulled" her legs towards the edge of the bed in his attempt to further assault her.

{¶24} On this record, there was sufficient evidence of both purpose and force to support the rape convictions.

{¶25} In regard to the kidnapping conviction, R.C. 2905.01(A)(4) provides in relevant part that, "[n]o person, by force, threat, or deception * * * shall * * * restrain the liberty of the other person * * * [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will[.]"

{¶26} Castellon contends that A.I.'s "initial belief that she was in fact being restrained by virtue of some implied threat to her safety was in fact incorrect — a realization she herself came to on her own and admitted freely." Thus, according to Castellon, "[t]here was no other evidence in the record that her liberty was compromised or restrained in any way whatsoever." We disagree.

{¶27} A.I. testified that when she woke up the second time, Castellon was in the

bedroom, he was on her legs, she could not move, and she was "scared to move." She also testified that he pulled her by her legs in an attempt to have further sexual contact with her. This evidence was sufficient to support the kidnapping conviction.

{¶28} In light of the above, the first assignment of error is overruled.

**Manifest Weight of the Evidence**

{¶29} For his second assigned error, Castellon contends that his convictions were against the weight of the evidence.

{¶30} "[W]eight of the evidence involves the inclination of the greater amount of credible evidence." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). It "addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *Wilson* at *id.* The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶31} Castellon contends that A.I.'s testimony was incredible because of inconsistencies, contradictions, and her inability to "recall significant events that were contemporaneous with the allegations, namely the texting and calling she conducted in those early morning hours." We disagree.

{¶32} Castellon's contentions are based on A.I's testimony relating to how long the penetration lasted and how she communicated with her friend and boyfriend after the rape, that is

via texting or calling. The finder of fact, which in this case was the trial court, was in the best position to determine A.I.'s credibility. *See State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

{¶33} Upon review, this is not an exceptional case in which the trial court clearly lost its way in convicting Castellon. The second assignment of error is overruled.

**Ineffective Assistance of Counsel**

{¶34} In his third assignment of error, Castellon contends that his trial counsel was ineffective. His argument revolves around the jail recordings and counsel's failure to file a pretrial motion to suppress or in limine; failure to object to the alleged hearsay testimony of Detective Mladek, who was neither a party to the conversations nor prepared the transcript of the recordings; and counsel agreeing to the admission of a summary of the jail recordings, as testified to by Detective Mladek, and without the translator who translated the "Spanglish" portions of the recordings. Castellon also contends that his counsel was ineffective because, in addition to failing to subpoena the translator to testify as to his or her qualifications, counsel also did not seek an independent translation of the recordings to verify accuracy with the transcript.

{¶35} To prove an allegation of ineffective assistance of counsel, Castellon must satisfy a two-prong test. First, he must establish that counsel's performance fell below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus.

{¶36} Second, Castellon must demonstrate that he was prejudiced by counsel's performance. *Id.* To show that he has been prejudiced by counsel's deficient performance, Castellon must prove that, but for counsel's errors, the result of the trial would have been

different. *Bradley* at paragraph three of the syllabus. Castellon bears the burden of proof on the issue of counsel's ineffectiveness. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In Ohio, a licensed attorney is presumed competent. *Id.*

**{¶37}** Evid.R. 801 defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Subsection (D) of the rule governs statements that are not hearsay; one such statement is an "admission by party-opponent." Evid.R. 801(D)(2). A statement is deemed an admission by party-opponent if "the statement is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity * * *." *Id.*

**{¶38}** Upon review, we find that the statements were admissible under Evid.R. 801(D)(2) as an admission of party-opponent. Further, we find that counsel's decision to not seek to exclude the statements very well may have been trial strategy. Specifically, the statements could have arguably supported an "accident" or "consensual encounter" defense.

**{¶39}** In regard to counsel not subpoenaing the translator or obtaining an independent translator, we note that, in general, the decision whether to call a witness "falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001); *State v. Williams*, 74 Ohio App.3d 686, 694, 600 N.E.2d 298 (8th Dist.1991). Moreover, the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel. *State v. Nicholas*, 66 Ohio St.3d 431, 436, 613 N.E.2d 225 (1993).

**{¶40}** We further note, however, that in this case, counsel's failure to call the translator limited the defense's ability on cross-examination. For example, in the transcript of the recordings there was an asterisk next to the word "dizzy" (when Castellon told his mother that he

could not say for certain that he did not commit the crime because he was "dizzy drunk"). Defense counsel asked Detective Mladek what the asterisk meant; the detective stated, "I didn't make the translation so I don't know." There was also confusion as to what some dots in the text of the transcript meant.

{¶41} Notwithstanding that counsel may have been deficient in not subpoenaing the translator, we find that Castellon has not demonstrated that, but for this error, the result of the trial would have been different, the second prong of an ineffective assistance of counsel claim. "[I]t is well settled that a rape conviction may rest solely on the victim's testimony, if believed, and that '[t]here is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction.'" *State v. Patterson*, 8th Dist. Cuyahoga No. 100086, 2014-Ohio-1621, ¶ 40, quoting *State v. Lewis*, 70 Ohio App.3d 624, 638, 591 N.E.2d 854 (4th Dist.1990). Thus, A.I.'s testimony alone was sufficient to support the convictions. We therefore overrule Castellon's ineffective assistance of counsel claim.

{¶42} The third assignment of error is overruled.

**Cumulative Errors**

{¶43} For his fourth assigned error, Castellon contends that he was deprived of a fair trial because of cumulative errors that were committed.

{¶44} Under the cumulative error doctrine, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial court error does not individually constitute cause for reversal. *State v. DeMarco*, 31 Ohio St.3d 191, 196-197, 509 N.E.2d 1256 (1987); *see also State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 258. To find cumulative error, we first must find that there were multiple errors committed at trial, and secondly, we must conclude

that a reasonable probability exists that the outcome of the trial would have been different but for the combination of the harmless errors. *State v. Madrigal*, 87 Ohio St.3d 378, 398, 721 N.E.2d 52 (2000).

**{¶45}** The only potential error that we have identified in this case is counsel's failure to subpoena the translator. As stated, the cumulative error doctrine may apply when there are multiple errors that were committed, which is not the case here. Moreover, even if counsel were deficient in failing to call the translator as a witness, we cannot, on this record, conclude that there was a reasonable probability that the result of the trial would have been different had counsel done so.

**{¶46}** In light of the above, the fourth assignment of error is overruled.

**Denial of Request for Self-Representation**

**{¶47}** In his final assignment of error, Castellon contends that the trial court erred by denying his request to represent himself.

**{¶48}** As mentioned, prior to proceeding to sentencing with Castellon's assigned counsel representing him, the trial court engaged in colloquy with Castellon to determine whether his request to represent himself was knowingly, intelligently, and voluntarily made. At one point during the colloquy, after asking the following to Castellon, Castellon indicated that he did not understand:

> Do you understand that due to the technicalities of a trial you may not have an opportunity to appeal the decision of this Court to a higher court? * * * Specifically as it relates to this portion of this trial, the sentencing portion, any error relating to sentencing would not be appealable by you if you are trying to argue ineffective assistance because you invited ineffective assistance because you are choosing to act as your own representative. A lawyer may appeal other portions of the trial, but not from this sentencing portion because you are choosing to represent yourself.

This is why I highly encourage people to keep with their retained counsel or keep with any counsel because these are issues that — if you forgot to say something at sentencing or you don't raise an issue at sentencing and then on appeal another attorney would like to argue that, * * * the appellate court would have to review that issue under a plain error standard of review, which is a very high burden. It's almost impossible to overcome. It can be done, but it's very rare. So you're going to be faced with that burden, the same burden — I'm going to hold you to the same standard as [your assigned attorney] who [is a] high school graduate, finished college, went to law school, passed the bar examination and has been practicing for many years, I will hold you to the same standard. The law will hold you to the same standard.

{¶49} After Castellon indicated that he did not understand, the trial court stated "[s]o Mr. Castellon, I'm not going to let you go ahead and represent yourself. You are not answering clearly. You don't understand what is happening before you. I am going to allow [your assigned counsel] to represent you in this case."

{¶50} The Sixth Amendment of the United States Constitution guarantees a criminal defendant a right to self-representation. *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus, citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). However, the right of self-representation is not absolute. *Indiana v. Edwards*, 554 U.S. 164, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008). A defendant "may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." *Gibson* at paragraph one of the syllabus, citing *Faretta*.

{¶51} The courts, however, are to indulge in every reasonable presumption against the waiver of a fundamental constitutional right such as the right to be represented by counsel. *State v. Dyer*, 117 Ohio App.3d 92, 95, 689 N.E.2d 1034 (2d Dist.1996). A criminal defendant must "unequivocally and explicitly invoke" his right to self-representation. *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 38. In addition, the right of self-representation must be timely invoked. *Id*. In *Cassano*, the court held that the

defendant's request for self-representation three days before the trial was untimely.   *Id.* at ¶ 40, citing *United States v. Mackovich*, 209 F.3d 1227, 1237 (10th Cir.2000) (requests made six to ten days before trial are untimely), and *United States v. George*, 56 F.3d 1078, 1084 (9th Cir.1995) (request made on the eve of trial was untimely).   When a request for self-representation is not unequivocally and timely made, the trial court may, in its discretion, deny the request.   *State v. Halder*, 8th Dist. Cuyahoga No. 87974, 2007-Ohio-5940, ¶ 50.

{¶52} Moreover, when a defendant invokes a right to self-representation, the trial court must ensure that the defendant knowingly and intelligently waived his right to counsel.   *Gibson* at 377.   The defendant need not have the skill and experience of a lawyer but he should be "made aware of the dangers and disadvantages of self-representation" so that the record shows that his or her choice was made "with eyes open."   *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 35. In addition, to be a knowing and intelligent waiver,

> such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

*Gibson* at *id.*

{¶53} There is no prescribed colloquy to establish an effective waiver; the information a defendant must possess to make an intelligent election "'depend[s] on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.'"   *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 101, quoting *Iowa v. Tovar*, 541 U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004).

{¶54} Here, Castellon's request to represent himself was made on the day of sentencing,

after the trial court denied his request for new counsel; it was therefore untimely.[2]   Moreover, he indicated that he did not understand one of the court's questions — and although it was just one question — it nonetheless was sufficient to demonstrate that a waiver of right to counsel would not have been knowingly and intelligently made.

{¶55} The fifth assignment of error is overruled.

{¶56} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR

---

[2]The record demonstrates that the counsel who represented Castellon at the trial was the third attorney Castellon had throughout the pendency of this case.