[Cite as *State v. Castellon*, 2023-Ohio-4215.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :

                              No. 112522

    v.                                  :

ESTEPHEN CASTELLON,                      :

    Defendant-Appellant.             :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 22, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-16-610907-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anthony T. Miranda, Assistant Prosecuting Attorney, *for appellee.*

Estephen Castellon, *pro se.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant Estephen Castellon appeals the trial court's denial of his motion for postconviction relief. For the reasons that follow, we affirm.

## I.  Factual Background and Procedural History

{¶ 2} Castellon is serving a seven-year prison sentence imposed after the trial court found him guilty of rape (R.C. 2907.02(A)(2)) and kidnapping (R.C. 2905.01(A)(4)) following a bench trial.  This court previously summarized the underlying facts of the case as follows:

> The following facts were adduced at trial.  The victim, A.I., lived with her mother and Castellon, her mother's boyfriend.  The incident giving rise to the charges occurred in August 2016, at which time A.I. was 18 years old.
>
> A.I. testified that, on the day at issue, she arrived home from work sometime after midnight.  As she was coming in the house, Castellon was leaving to go to a bar.  Upon entering the house, A.I. saw her mother sleeping on the couch in the living room.
>
> A.I. testified that her bedroom was in the attic of the house, and that it was hot in the attic during the summer months.  As such, A.I. went to her mother's bedroom to sleep in her mother's bed.  A.I. was awakened when she heard Castellon return home.  He came into the mother's bedroom, which was where he normally slept, and, upon finding A.I. there, told her he would go sleep on the couch.
>
> A.I. testified that she fell back asleep, but was awakened again.  This time, she noticed that she was partially undressed, and that someone was engaging in sexual conduct with her.  She was on her stomach and the person was on her legs and she could not move.  At first A.I. thought someone had broken into the house and was scared.  She did not want to move because she was afraid they would hurt her mother or son who were also in the house.  After a couple of minutes, she noticed that the person was being "gentle."  The person then engaged in another form of sexual conduct with her.  At that time, she realized that the person was Castellon — he was trying to have further sexual contact with her and was pulling her legs towards the edge of the bed.  A.I. told him to stop, which he did.
>
> A.I. left the bedroom and contacted a friend, who came to the house; the two locked themselves in the attic.  The next day, A.I. told her mother what had happened.  She went to the police the following day and provided them with the clothes she had been wearing at the time

of the incident. A police officer drove A.I. to the hospital. No rape kit was administered because it was a couple of days after the fact and A.I. had showered since the incident.

A.I. testified that the following day, Castellon texted her, saying "I'm so sorry." According to A.I., at the time of the incident, her mother was about 70 pounds heavier than she was, and so it would not have been easy for Castellon to confuse the two women. A.I.'s mother testified that Castellon told her that he blacked out and did not remember what had happened.

*State v. Castellon*, 8th Dist. Cuyahoga No. 106813, 2019-Ohio-628, ¶ 7–12.

**{¶ 3}** The trial court, as factfinder, found Castellon guilty of two counts of rape and one count of kidnapping with a sexual motivation specification. The court acquitted Castellon of one count of attempted rape.

**{¶ 4}** In the time between the court's verdict and sentencing, Castellon filed numerous pro se motions and "notices" with the trial court, requesting various forms of relief. Among these, Castellon filed a "demand to dismiss case due to speedy trial violation" and a "demand for time tolling calculations of 3 days for each 1 day in custody pursuant to O.R.C. 2945.71." Castellon also filed a "demand for acquittal due to ineffective assistance of defense counsel for failing to subpoena the federal technicia[n] and the state technicia[n] that conducted data dump files of defendant's cell phone" and a "motion for new trial due to newly discovered evidence of a cell phone data drop transcript authored by Brian E. Cooney of the Federal Bureau of Investigation." In the latter motion, Castellon stated that local police investigators "learned that Castellon's phone would have to be transfer[r]ed to Cleveland FBI office and then transfer[r]ed to the [FBI's] Quantico lab." He said that police later retrieved the cell phone from the FBI when the FBI indicated "that

the phone was ready to be picked up." Castellon argued that this "chain of events gave rise to a cell phone data drop transcript" authored by an FBI employee, which he said had not been produced in discovery.

{¶ 5} As our court previously summarized:

> The trial court acknowledged the [pro se] motions at the sentencing hearing, telling Castellon that "Ohio law does not allow dual representation. You have an assigned attorney * * * to represent you, which means that all of these motions can be stricken from the record because they were not filed by [your assigned attorney]." The trial court asked Castellon whether he wanted his assigned attorney to represent him at sentencing, to which he responded "no * * * unless I am given the opportunity to retain different counsel." The trial court denied Castellon's request for different counsel.
>
> The trial court then engaged in colloquy with Castellon to determine if he was knowingly, intelligently, and voluntarily giving up his right to counsel. After its colloquy with Castellon, the court denied his request for self-representation. Counsel told the court that she did not wish to adopt and argue any of the pro se motions Castellon had filed.

*Castellon*, 2019-Ohio-628, at ¶ 5–6.

{¶ 6} The trial court disregarded the pro se filings and sentenced Castellon to seven years in prison. Castellon filed a direct appeal, through new counsel, in which he argued the following five assignments of error:

I.   There was insufficient evidence produced at trial to support a finding of guilt on all counts.

II.  The appellant was found guilty against the manifest weight of the evidence.

III. Appellant was denied the effective assistance of counsel in his trial.

IV.  The cumulative errors committed during the trial deprived the appellant of a fair trial.

V. Appellant was denied his right to represent himself at sentencing.

{¶ 7} After oral argument, Castellon filed a pro se motion to file a supplemental brief in his direct appeal. He argued that his appellate counsel failed to set forth several assignments of error that he wanted included in his appeal, including, among other things: (1) there was prosecutorial misconduct in that evidence from his cell phone was "missing," the state never produced "the chain of custody" over his cell phone and body-camera recordings were deleted; (2) his trial counsel was ineffective; (3) the state falsely claimed that he was a fugitive when "it [was] well documented that [he] had relocated to California and established residency" before the alleged rape and his defense counsel "had [his] proof of address but chose not to present it"; and (4) he was denied his constitutional right to a speedy trial.

{¶ 8} This court denied the motion to file a supplemental brief. *State v. Castellon*, 8th Dist. Cuyahoga No. 106813, Motion No. 525770 (Feb. 25, 2019). The court overruled the assignments of error that were originally raised in the appeal and affirmed the convictions and sentence. *Castellon*, 2019-Ohio-628, at ¶ 56.

{¶ 9} Castellon thereafter applied to reopen the appeal, arguing that his appellate counsel was ineffective. He argued, among other things, that he was denied his constitutional right to a speedy trial. This court denied the application, finding that "a substantive review of the docket * * * fails to demonstrate a violation of Castellon's right to a speedy trial." *State v. Castellon*, 8th Dist. Cuyahoga No.

106813, 2019-Ohio-3652, ¶ 16–18. The Ohio Supreme Court declined to accept jurisdiction over Castellon's appeal from that judgment. *12/17/2019 Case Announcements*, 2019-Ohio-5193.

{¶ 10} On March 27, 2019, Castellon filed a "petition to vacate or set aside judgement [sic] of conviction or sentence" in the trial court. In that petition, he argued that he was entitled to postconviction relief under R.C. 2953.21 because (1) the state allegedly failed to turn over certain evidence related to his cell phone, certain police body-worn camera recordings and recorded jail calls, and falsely "painted the picture that he was running" from the charges; (2) his trial counsel was ineffective for failing to investigate the evidence he said was missing or fabricated and "failed to present proof of [his] California address."

{¶ 11} The trial court summarily denied Castellon's petition. Castellon did not appeal that judgment.

{¶ 12} In April 2020, Castellon filed a pro se petition in the U.S. District Court for the Northern District of Ohio seeking a writ of habeas corpus under 28 U.S.C. 2254, arguing — among other things — that his trial counsel was ineffective for failing to challenge "manipulated" cell-phone data, missing body-camera footage and jail calls, and for failing to "admit proof of address to impeach implication of flight." *Castellon v. Forshey*, N.D. Ohio No. 1:20-CV-00940-JRK, 2023 U.S. Dist. LEXIS 167433, 16 (Apr. 28, 2023). He also argued that the state engaged in prosecutorial misconduct by presenting "post-indictment evidence" in the form of jail-call recordings, "manipulat[ing] the content of the calls" and by "[t]he

warrantless breach of [his] cell phone, manipulation of the chain of custody and lack of testimony from the technician who supposedly performed the data dump * * *." *Id.* at 17. He also argued that he was denied his constitutional right to a speedy trial. *Id.* at 18.

{¶ 13} Castellon then moved for a stay of the federal habeas petition, arguing that he received a federal Freedom of Information Act ("FOIA") disclosure from the U.S. Department of Justice that contained additional evidence he needed to present in state court through a successive postconviction petition. *Castellon v. Forshey*, N.D. Ohio No. 1:20 CV 940, 2023 U.S. Dist. LEXIS 165927, 6 (Sept. 19, 2023).

{¶ 14} The federal trial court denied the stay and dismissed his habeas petition, finding his claims to be either defaulted or meritless. *Id.* at 25.

{¶ 15} On February 10, 2023, Castellon filed the petition at issue in this appeal — a successive petition for postconviction relief pursuant to R.C. 2953.23. In the petition, Castellon raised the following arguments:

I.    Due to constitutional speedy trial violation(s) Castellon was denied his Sixth and Fourteenth Amendment right(s).

II.    Prosecutorial misconduct

III.    The state abused the grand jury process introducing post indictment evidence

IV.    The structure of the trial collapsed when the defendant was denied confrontation and compulsory process

V.    Ineffective assistance of counsel

VI.    Cumulative errors

{¶ 16} The state opposed the petition. On February 22, 2023, the trial court summarily denied the petition.

{¶ 17} Castellon appealed, raising the following six assignments of error, which mirror the arguments he made in his petition:

### First Assignment of Error

Due to Constitutional speedy trial violation(s) Castellon was denied his Sixth and Fourteenth Amendment right(s)

### Second Assignment of Error

Prosecutorial Misconduct

### Third Assignment of Error

The State abused the grand jury process introducing post indictment Evidence

### Fourth Assignment of Error

The structure of the trial collapsed when the Defendant was denied Confrontation and Compulsory process

### Fifth Assignment of Error

Ineffective assistance of Counsel

### Sixth Assignment of Error

Cumulative Errors

## II. Law and Analysis

{¶ 18} The trial court was without jurisdiction to consider Castellon's untimely and successive petition because he was not unavoidably prevented from discovering the facts on which his arguments are based. He raised or could have

raised these arguments (or permutations of them) in his direct appeal or in his earlier petition. Moreover, his arguments are barred by res judicata.

{¶ 19} Pursuant to R.C. 2953.21(A)(1)(a)(i), a person who has been convicted of a criminal offense and who "claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States" may file a petition in the court that imposed sentence, asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. Pursuant to R.C. 2953.21(A)(2), petitions for postconviction relief under R.C. 2953.21(A)(1)(a)(i) must generally be filed within 365 days after the trial transcript is filed in the direct appeal of the conviction at issue. The trial transcript in Castellon's direct appeal was filed on March 26, 2018. Castellon's second petition for postconviction relief was successive and untimely under R.C. 2953.21(A).

{¶ 20} A trial court lacks jurisdiction over an untimely or successive petition for postconviction relief unless the petition satisfies the criteria set forth under R.C. 2953.23(A)(1) or (2). R.C. 2953.21(A); R.C. 2953.23(A); *State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 192 N.E.3d 470, ¶ 20; *State v. Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744, 121 N.E.3d 351, ¶ 36–38 ("[A] petitioner's failure to satisfy R.C. 2953.23(A) deprives a trial court of jurisdiction to adjudicate the merits

of an untimely or successive postconviction petition.").  R.C. 2953.23(A)(1)[1] states, in relevant part:

> [A] court may not entertain a petition filed after the expiration of the period prescribed in [R.C. 2953.21(A)] or a second petition or successive petitions for similar relief on behalf of a petitioner unless * * * [b]oth of the following apply:
>
> (a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
>
> (b) The petitioner shows by clear and convincing evidence that, but for the constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted[.]

{¶ 21} "Res judicata generally bars a convicted defendant from litigating a postconviction claim that was raised or could have been raised at trial or on direct appeal." *Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783, 193 N.E.3d 470, at ¶ 17, citing *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus; *State v. Hatton*, Slip Opinion No. 2022-Ohio-3991, ¶ 22 ("Res judicata applies to * * * petitions for postconviction relief."), citing *State v. Reynolds*, 79 Ohio St.3d 158, 679 N.E.2d 1131 (1997).  Res judicata operates to bar successive petitions for postconviction relief that raise claims that were or could have been raised on

---

[1] R.C. 2953.23(A)(2), which applies to offenders for whom DNA testing was performed under R.C. 2953.71 through 2953.81 or former R.C. 2953.82, is inapplicable here.

direct appeal or in a prior petition. *See, e.g.*, *State v. Waver*, 8th Dist. Cuyahoga No. 108820, 2020-Ohio-2724, ¶ 32; *see also State v. Mack*, 8th Dist. Cuyahoga No. 101261, 2018-Ohio-301, ¶ 15 ("The doctrine of res judicata prevents repeated attacks on a final judgment for issues that were or could have been previously litigated."); *State v. Bridges*, 8th Dist. Cuyahoga Nos. 103634 and 104506, 2016-Ohio-7298, ¶ 33 ("[A] postconviction petition does not provide a petitioner a second opportunity to litigate his or her conviction.").

{¶ 22} We review a decision to grant or deny a petition for postconviction relief for abuse of discretion. *Hatton* at ¶ 38, citing *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 51–52, 58. However, whether a trial court has subject-matter jurisdiction to entertain an untimely or successive petition for postconviction relief is a question of law, which we review de novo. *Hatton* at ¶ 38, citing *Apanovitch* at ¶ 24.

{¶ 23} In this case, Castellon's petition did not satisfy the requirements of R.C. 2953.23(A)(1). Castellon's petition fails to show that he was unavoidably prevented from discovering the facts on which the claims in his petition were based, that any new federal or state right was recognized subsequent to his filing of the earlier petition or that, but for the alleged constitutional error, no reasonable factfinder would have found him guilty of the offenses of which he was convicted. This is not a case involving new claims or issues that have not been litigated, or could not have been litigated, before. *Compare Hatton* at ¶ 25.

{¶ 24} Castellon argues that his petition was based on newly discovered information obtained through a FOIA disclosure made by the U.S. Department of Justice on November 7, 2022. He attached the FOIA response to his petition; the disclosure includes a search warrant issued by the Cuyahoga County Court of Common Pleas authorizing the search of Castellon's cell phone and internal records and communications of the Federal Bureau of Investigation related to the FBI's assistance in unlocking his cell phone. Castellon argues that these documents led him to discover constitutional violations that he was unavoidably prevented from discovering sooner.

{¶ 25} The state responds that Castellon knew in advance of trial that the FBI had assisted in unlocking his cell phone and that his phone was searched pursuant to a warrant. It argues that Castellon's petition was not based on any newly discovered evidence, that his claims are barred by res judicata and that the claims are substantively meritless.

{¶ 26} We consider each of Castellon's assignments of error in turn.

**A. First Assignment of Error – Speedy Trial**

{¶ 27} Castellon asks this court to "dismiss the entire indictment based on the violation(s) of his constitutionally guaranteed right to a speedy trial, as the amount of evidence that was originally available at the time of indictment that is now either missing or destroyed has extremely prejudiced" him.

{¶ 28} In support of his argument that he was unavoidably prevented from making this argument sooner, Castellon points to two documents outside the

record: (1) a document from the Riverside County (California) Sheriff's Department that states that Castellon was taken into custody on December 5, 2016, and (2) the FBI's FOIA response.

{¶ 29} Castellon seems to be arguing that the state knew that he was not a fugitive but treated him as such to manipulate the speedy-trial clock, then secured a warrant that allowed them an indefinite amount of time to search his phone for the purpose of further delaying trial.

{¶ 30} Castellon was not unavoidably prevented from asserting these arguments sooner. He knew that he was arrested on December 5, 2016, in California, based on these allegations. He also knew — from a police report produced in discovery that is also attached to his successive petition for postconviction relief — that investigators secured a warrant to search his phone in January 2017, transferred the phone to the FBI for assistance and received it back unlocked in May 2017. Even if Castellon did not have a copy of the actual warrant until November 2022, he knew that there had been a warrant and knew the timetable and chain of custody of how that warrant was executed. Thus, he was not "unavoidably prevented" from arguing that the means of searching his phone resulted in a deprivation of his constitutional right to a speedy trial.

{¶ 31} Indeed, Castellon *has* raised a constitutional-speedy-trial argument before — he raised it in his pro se filings before sentencing, then in his motion to file a supplemental brief in the direct appeal, then in his application to reopen that appeal and then again in his federal habeas case. Because Castellon was not

unavoidably prevented from discovering the facts on which his speedy-trial argument is based, the trial court was without jurisdiction to consider the argument in this successive and untimely petition.

{¶ 32} Moreover, the argument is barred by res judicata. This court previously considered Castellon's constitutional-speedy-trial argument and found that "a substantive review of the docket * * * fails to demonstrate a violation of Castellon's right to a speedy trial." *State v. Castellon*, 8th Dist. Cuyahoga No. 106813, 2019-Ohio-3652, ¶ 16–18.

{¶ 33} We, therefore, overrule Castellon's first assignment of error.

## B. Second Assignment of Error – Prosecutorial Misconduct

{¶ 34} Castellon argues that the state suppressed materially exculpatory evidence from him. He says the state suppressed a DMV record that showed that he established a California residence in June 2016, that "Detective Mladek knew this" and that the state continued to allege that his buying a plane ticket to California constituted evidence of consciousness of guilt. He also says that the state suppressed the search warrant that had been obtained to search his cell phone. He further claims that police deleted text messages from his cell phone while he was in custody and destroyed two body-camera recordings. Finally, he claims that the state indicted him without securing a DNA sample from the victim's romantic partner for comparison to DNA recovered in the case.

{¶ 35} Castellon again relies on only two categories of documents in support of his argument that he was unavoidably prevented from making these claims

sooner: (1) documents he says show that he established a residency in California before the rape and (2) the FOIA response, which included the search warrant that he knew about but apparently did not have a copy of before trial. The other citations in the petition are to evidence in the trial record.

{¶ 36} Castellon could have, and has, previously argued that the state improperly cast him as a fugitive. He obviously knew the circumstances of his residency and work in California long before he received the federal government's FOIA response. He raised this argument (or permutations of it) in his pro se motion to file a supplemental brief in his direct appeal, then in his federal habeas case and then again in his first petition for postconviction relief.

{¶ 37} The same can be said about Castellon's argument that the state allegedly deleted text messages from his cell phone and deleted body-camera recordings. Castellon obviously knew what was on his own cell phone long before the FOIA response and his trial counsel cross-examined state witnesses about the circumstances of the state's deletion of the body-camera recordings at trial. Indeed, Castellon raised these arguments in his pro se motion to file a supplemental brief in his direct appeal, in his federal habeas case and in his first petition for postconviction relief.

{¶ 38} Similarly, no new evidence outside the record supports Castellon's argument that the state acted inappropriately in securing an indictment before obtaining a DNA reference sample from the victim's romantic partner. He could

have raised that argument at trial, in the direct appeal or in his first petition for postconviction relief.

{¶ 39} While Castellon says that he was never provided a copy of the search warrant used to search his cell phone until the FOIA response, he was well aware that the warrant existed before trial. The fact that the warrant existed is reflected in a police report produced by the state in discovery. Castellon could have raised an argument regarding the state's alleged suppression of the warrant at trial, in the direct appeal and in his first petition for postconviction relief.

{¶ 40} Because Castellon was not unavoidably prevented from discovering the facts on which these arguments are based, the trial court was without jurisdiction to consider the arguments in this successive and untimely petition. Moreover, because Castellon raised several of these arguments in his first petition for postconviction relief and did not appeal the trial court's denial of his first petition, and he could have raised all of these arguments in prior proceedings, those arguments are barred by res judicata.

{¶ 41} We, therefore, overrule Castellon's second assignment of error.

## C. Third Assignment of Error – Post-Indictment Evidence

{¶ 42} Castellon argues that there was an abuse of the grand-jury process because the state continued to possess his cell phone for purposes of searching it pursuant to the warrant, even after he was indicted. Castellon cites no evidence outside the record in support of this claim. To the extent that the claim is purportedly based on the FOIA disclosure, the same reasoning applies to this

assignment of error as applies to his first: Castellon was well aware, before trial, of how investigators searched his phone and the timeline for doing so. He was not unavoidably prevented from making this argument at trial, in the direct appeal or in his first petition for postconviction relief. Indeed, he raised this "post-indictment evidence" argument in his first petition for postconviction relief.

{¶ 43} Because Castellon was not unavoidably prevented from discovering the facts on which this argument is based, the trial court was without jurisdiction to consider the arguments in this successive and untimely petition. Moreover, this argument is also barred by res judicata.

{¶ 44} We, therefore, overrule Castellon's third assignment of error.

### D. Fourth Assignment of Error – Confrontation and Compulsory Process

{¶ 45} Castellon seems to argue that he was denied the right of compulsory process because (1) the police detective who testified about the contents of his cell phone was not qualified to analyze the contents of the phone, (2) it was not sufficiently established at trial how the data extraction of the phone was performed and (3) the testimony of the person who actually performed the extraction was "crucial" to this case but that person did not testify. He does not point to any evidence outside the record in support of this claim and makes no attempt to show how he was unavoidably prevented from raising this argument sooner. Indeed, he raised this argument in his pro se filings before sentencing.

{¶ 46} Because Castellon was not unavoidably prevented from asserting these arguments in his direct appeal or in his earlier petition for postconviction

relief, the trial court was without jurisdiction to consider the arguments in this successive and untimely petition. Moreover, the argument is barred by res judicata.

{¶ 47} We, therefore, overrule Castellon's fourth assignment of error.

### E. Fifth Assignment of Error – Ineffective Assistance of Counsel

{¶ 48} Castellon argues that his trial counsel was ineffective by (1) failing to call the translator who translated the jail calls or move to suppress the jail calls before trial, (2) failing to investigate or move to suppress the warrant for the cell phone or the evidence extracted from the cell phone and failing to adequately raise the issue of the allegedly missing text messages and (3) failing to adequately address the issue of the missing body-camera recordings.

{¶ 49} Castellon has raised all of these arguments before, either in his presentence pro se motions, in the direct appeal or in his first petition for postconviction relief. His petition fails to show that he was unavoidably prevented from making these arguments and almost every citation in support of these arguments is a citation to the record, not some piece of newfound evidence outside the record.

{¶ 50} Because Castellon was not unavoidably prevented from discovering the facts on which these arguments are based, the trial court was without jurisdiction to consider the arguments in this successive and untimely petition. Moreover, the arguments are barred by res judicata.

{¶ 51} We, therefore, overrule Castellon's fifth assignment of error.

### F. Sixth Assignment of Error – Cumulative Error

{¶ 52} Castellon argues that "the cumulative effect and prejudice of these intersecting constitutional violations" as stated in his first five assignments of error "had a chilling effect on the defendant's due process * * *." As discussed above, Castellon was not unavoidably prevented from raising any of his other arguments at trial, in the direct appeal or in his first petition for postconviction relief. Thus, he was not unavoidably prevented from raising the argument that those errors, taken together, warrant a new trial.

{¶ 53} We, therefore, overrule Castellon's sixth assignment of error.

## III. Conclusion

{¶ 54} Castellon's second petition for postconviction relief merely rehashes arguments that he has previously raised. He has not shown that he was unavoidably prevented from making these arguments in his direct appeal or in a prior petition for postconviction relief. Because Castellon did not make the requisite showing under R.C. 2953.23(A)(1), the trial court lacked jurisdiction to consider his petition for postconviction relief and properly denied it.

{¶ 55} Having overruled Castellon's assignments of error for the reasons stated above, we affirm.

It is ordered that the appellee recover from the appellant the costs herein taxed.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
MICHAEL JOHN RYAN, J., CONCUR